May it please the court. My name is Clifford Cantor. I represent appellant Alexandra Severance. In Ms. Severance's cell phone contract with Unicel, the district court correctly determined that the words we and us may not mean the same thing. The district court then erred by holding that the contract itself lacked context for the district court to ascertain that the word us means Unicel. This was an error because the contract, indeed that very sentence, is full of context that leads to the conclusion that us means Unicel. Well, but okay, if we look at the language, it seems like based on your reading of the word us in the Unicel contract, are we required to find only a dispute with is subject to arbitration provision, and doesn't that lead to an absurd reading of the contract? To answer your first question, Your Honor, no. If new singular wireless is an assignee of Unicel, then new singular wireless should be inserted wherever Unicel is, and that would also include the word us. So then the relevant phrase would read prior or future disputes, I'm you and Unicel, or prior and future dealings between you and new singular wireless, if there's a proper assignment. Well now, I understand your argument to be that the arbitration clause only applies to disputes with Unicel. So, doesn't this imply that if the contract is sold or transferred to a new company, as Judge Callahan says, it doesn't make any sense. The arbitration clause is a dead letter. Your Honor, what did you mean by a dead letter? Inapplicable to anybody except Unicel. Your Honor, that is one interpretation. The judge also held that if the contract was properly assigned to new singular wireless, then the district court held that the name new singular wireless would be substituted for Unicel wherever it occurs. Under that interpretation, even that interpretation, the phrase prior and future dealings between you and new singular wireless has nothing to do with AT&T sending unsolicited text spam to Ms. Severance. New singular wireless is not AT&T. They are different corporations. So, either way. Now, the reason AT&T's interpretation is totally untenable is this. AT&T, their contention is very simple. The term we, at the beginning of the arbitration clause. Your Honor's earlier argument. Oh, all right. There's, I should have said in the record that there was an enlargement that we'd been provided at the bench, and my understanding, I was advised by the clerk that both sides have seen this, and this is an enlargement of something that's in the record. Is that correct? Yes, Your Honor. All right. Okay. And we have it here at the bench, and highlighted. So, the first, the very first line defines Unicel to be we or us. Now, moving down to the arbitration clause, which is paragraph two. The first, this is one giant, the meat of the arbitration clause is one giant sentence after 2A. It starts with the word we, and then in parentheses, there's an expansion to include a whole list of other entities. Assignees, agents, officers, directors, shareholders, parents, subs, affiliates, and so forth. If, so that's, that's the expansion. Are you arguing this as an ambiguity? No, that's not ambiguous, ambiguous. We're arguing that the word us cannot have the same meaning, and here's why. Because if it's ambiguous, you lose, right? Right. Us is not ambiguous. AT&T's interpretation is that we has been modified by these parentheses, and therefore us has the same meaning. Ms. Severance's argument is that we is modified, us is not, and does not have the same meaning, and here's the context that shows that. If us has the same meaning, and by the way, the phrase between you and us occurs twice in the sentence, one right after another. The different types of claims that are arbitrable, one is billing disputes between you and us, followed immediately by prior or future dealings between you and us. In both of those contexts, suppose us included agents, shareholders, directors, officers, parents, employees, subsidiaries, affiliates. Suppose one of these affiliates, or shareholders, or outside directors, runs a restaurant or a hardware store, and Ms. Severance goes there and ends up in a billing dispute. I don't think anyone in their right mind would say that that billing dispute over the restaurant food is arbitrable under this unicel contract, because us includes that employee, or outside director, or affiliate, or shareholder, or parent, or it can't. The, the, nobody would try to arbitrate that restaurant dispute under this contract. Now, you argue American Express, you think that's going to help you? Your Honor, I'm kind of not thinking so, but I'm interested to see how you think that it's going to help you, because I've read the argument on that, and the fact that they granted cert on that, and the fact that if you look where the Supreme Court is in arbitration cases, I'm not, but I'm just wondering if there's, I think there's, there's another case, Oxford Insurance versus Sutter, which I've been following too, that, that was recently argued. I mean, is there any reason that any of those would help you in a way that we should wait? Let me put it this way, Your Honor. None of that matters if the contract requiring arbitration doesn't require arbitration. If us means Unicell, or even if us means New Singular Wireless. I think, I, I think Judge Callahan's question really gets to the issue of, if we get to the issue, for instance, the issue of, you know, does this arbitration clause, you know, prohibit the, prevent the vindication of the plaintiff's rights? If we reach that question, for instance, should we defer, you know, and wait until this cert petition is worked out? It, it, plaintiffs have recommended, I'm sorry, Ms. Severance has recommended that, Your Honor. The defendant recommends the opposite. Okay. Here's, here's the way that Ms. Severance's statutory rights are prevented from being vindicated. And again, this, in arbitration, this only applies if us somehow means AT&T, not New Singular Wireless. If the contract doesn't refer to, if the contract, if between you and us does not mean AT&T, contract doesn't apply. There's no arbitration. That's what I said. I said, if we get by that, that argument, and we have to confront the issue that you raised about, you know, preventing vindication of rights. Okay. Here's the argument. The argument is over discovery. The district judge incorrectly held, and I'm going to quote from the opinion, plaintiffs do not explain why we need more than limited discovery to prove the crux of their claim, that they received unsolicited text messages from AT&T. So the district court evidently thought that the, the only element of the claim is, did you receive an unsolicited text message? Yes. Done. There's nothing more to prove. The Ninth Circuit in a relatively recent case, Satterfield versus Simon and Schuster said, this is actually a very sophisticated claim to prove. The plaintiff has the burden of proving that whoever sent these texts, these spams, that person's, that person or entity's computer equipment has to be an automatic telephone dialing system. The definition that the Ninth Circuit gave is very complex. It has to have the capacity. Actually, the Ninth Circuit was simply quoting the statute. It has to have the capacity to dial in certain ways from certain lists of numbers. In order, in order to do that, there, the, the, the district court was simply wrong that that wasn't explained. It's in the record. It's in the Edelson declaration. But isn't, but isn't AT&T claiming that they'll pick up all the discovery costs here except for $75? The question is not who picks up the discovery costs. This isn't a question about discovery costs. The question is that the wireless industry arbitration rules, the relevant rule is rule E9. Let me give you a page. Well, I guess, but what happened to these, what happened to individual people? If you go to the parade of horribles, is they got a few text messages, right? Which are, which are alleged to be violations of federal statute with a, with a penalty that statutory damages that are very high that Congress adopted. But why can't that be individually vindicated? I mean, because a lot of times you look at claims where it does seem that it would be much more difficult and, and you, you don't have, you know, I, I look at all these cases and regardless of how we feel about it, the Supreme Court seems to be continuing every time there are carve outs and people say something's unconscionable or that doesn't have to be arbitrated, the Supreme Court keeps taking these cases and says, you know, we really mean what we say here. And, you know, your facts are not, don't screen out as much as some of the other facts have. Here's, here's the reason why it can't be vindicated in arbitration. The, the rules are written by the Wireless Industry Association, the rules that are specified in this contract. It's in the excerpts of record at 141, rule E9 would apply. That rule says there shall be no discovery. There's an exception. It says except for extraordinary cases. Now I submit that if this happened to more than 100,000 people, this is not an extraordinary case. This is an ordinary case that happens in the wireless industry all the time. So I presume there would be no discovery. Now, how in the world can the severance prove what whoever sent these email, whether it was directly by AT&T or a subcontractor, maybe she needs a subpoena. How can she prove the capacity of that computer system without discovering both the hardware, the software, depositions of experts and so forth? Do you want to save any time for rebuttal? Yes, I do, Your Honor. Thank you. All right. I want to go back and remind the court that the crux of this case is that this arbitration contract does not apply to AT&T's tech span in the first place because at most it applies to prior or future dealings between Ms. Severance and New Singular Wireless, not AT&T. What it says, and to hold otherwise. So from your perspective, your strongest argument is the we and the us, and it gets more difficult if we get past that. If us includes the whole list of subsidiaries, shareholders and so forth, we run into weird situations where one of the shareholders is a house painter, paints Ms. Severance's house. It's supposed to be blue. It turns out red. And that shareholder says, aha, there's a wireless contractor that has an arbitration provision. Under that provision, us includes me, I can compel arbitration. And nobody would think that's a reasonable result. All right. Thank you. Thank you, Your Honors. Good morning. Morning. May it please the court. Richard Katsky for AT&T Mobility. The court's concern reflected in the questions of Mr. Kanner is correct. On Severance's reading of the contract, the contract would make no sense. This case really comes down to two basic points. First, the district court made factual findings on undisputed evidence and subject to clear error review that New Singular owned Ms. Severance's contract and that AT&T Mobility is the parent corporation. And second, as a matter of substantive federal law of arbitrability, any doubts, any questions, any concerns must be resolved in favor of arbitration. And I want to focus on the scope of the argument. So that's sort of the opposite of say like insurance policies where the insurance policy is ambiguous. It's in favor of the insured. So why shouldn't, you know, why shouldn't it be in favor of the consumer? Well, Your Honor, what the Supreme Court and this court has said over and over again is that it's a matter of substantive law specified by Congress that arbitration is an appropriate way to deal with to deal with disputes and that contracts should be enforced as written. That's what the what that's what this court and the Supreme Court have said over and over again. Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. So what that means is this. If, of course, what do you think? I mean, that overrides a Vermont law that says, you know, like California law, that ambiguous language should be construed against the drafter. Absolutely, Your Honor. It's it's federal law. It necessarily overrides state law. What this court has said is not just that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, but also. Yes, Your Honor. Is that just an absolute that federal law always overrides state law? In in this particular instance, the question of doubts. Absolutely, Your Honor. What this way to keep saying absolutely. Why is it so absolutely clear? Well, because what this court has said is that federal rules of statutory interpretation, this kind of case always overrides state rules. Yes, Your Honor. That's that's the substantive law of arbitrability. What this court has said is that the only way that a that a party opposing arbitration can win is if if that party can show that, as this court put it, the contract is not susceptible of an interpretation that covers the claim. Another thing that. What's your best case on this? Well, there are there are about three of them to point to, Your Honor. In the Phoenix Newspaper's case, which is 989 F second 1077, this court said that the opponent of arbitration bears the burden to show that the language of the arbitration clause excludes the dispute from the clauses purview. This court said in French against Merrill Lynch and in Republic of Nicaragua, which I believe are cited in our briefs, has the not susceptible of an interpretation language. And in dozens of cases, this court has has quoted the Supreme Court's language from Moses H. Cohn, saying any doubts must be resolved in favor of arbitration. I'd like to ask you a question. New Cedar PCS, not AT&T, actually took Unicel's place as the owner of the contract. Yes, Your Honor. Why should we assume the arbitration clause covers disputes with the corporate parent when it doesn't say so specifically? Well, Your Honor, the the arbitration clause includes and specifically mentions in addition to assignees, parents, subsidiaries, agents and the like. We think it can't be necessary for a contract to define we and us and our each independently, separately and redundantly, in part because as a matter of basic grammar, those words mean the same thing. Redundant definitions wouldn't make the contract clearer, Your Honor. It would make it unreadable. But again, even if how we read the contract isn't the only plausible interpretation, it's certainly a reasonable one, as the district court correctly concluded. So as a matter of law, the contract has to be read that way. In fact, what this court has said is not just that if there are two reasonable interpretations, the one favoring arbitration must be chosen. But in fact, that even if the best interpretation is that the arbitration is not covered, if there's an alternative interpretation in which it is, that's the one to go with. The court said so in Teamsters against Frida Lay and Comedy Club against Improv West. The list goes on and on. Well, what if all right, what if we get to the point where we're looking to the scope of arbitration provision here? Is there a reason that we need to wait for American Express and Oxford? Oh, we don't think so, Your Honor. We have no problem if the court wants to wait the two months before the Supreme Court decides the case. We read the briefs, what the parties are asking for, and the argument the same way that you did, Judge Callahan, in thinking that it's not likely to come out in favor of severance. If the court wants to wait, that's just fine. But here's the thing. If the Supreme Court declines to recognize the broad vindication theory that severance is offered here, and again, that's not even what the parties are seeking there. They've said that a case like hers would not present a vindication problem. But if the Supreme Court recognized that theory, we would still win on the district court's factual findings because the district court here applied Amex. It was before this court had decided Conneff, so the district court didn't have the benefit of Conneff. The district court applied Amex, made factual findings. Amex was, and Amex in the lower court was in favor of the appellant, correct? And then the, when the Supreme Court granted. Yes, Your Honor, that's correct. So it applied the most favorable reading of Amex is what you're saying? Absolutely. That's what the district court here, and went and did the test under Amex and said that severance has failed, utterly failed to meet her burden to establish that she couldn't vindicate her rights. Here's why that is. In Amex, and what the Second Circuit's opinion makes clear is that there was an expert economist who submitted a detailed affidavit that explained at length that the work that that, that that expert would have to do to, to as an expert in the case, how long it would take, what the hourly rate was, and how all that compared to the total damages claimed by each of the potential class members. Or severance points to the Christian case, which is a preconception First Circuit case where there were three experts with incredibly detailed, incredibly detailed affidavits. What the district court said here, and it's at page 21 or thereabouts in the excerpts and the, and the opinion, is that severance didn't do any of that here. She didn't meet her burden. Her whole argument turns on basically three quarters of one page of a declaration by her own lawyer, asserting without any calculations of any sort that the discovery cost for proving a Telephone Consumer Protection Act case would, would be high enough that, here's the language her lawyer used, they would provide little incentive for attorneys to take on such cases on an individual basis. No expert affidavit, no computation of expenses, no hourly rates, no estimation of what the case would take, nothing. But severance doesn't deny that, doesn't dispute that she's individually claiming $18,000 in, in statutory damages. Now, the fact that her, that her lawyer who wrote the affidavit, a lawyer in Chicago, a self-described class action lawyer, doesn't think that it's worth bringing an $18,000 claim in Washington on a, on behalf of an individual claimant, doesn't say anything about whether there's a Vermont lawyer or lots of Vermont lawyers who would be willing to take the claim, particularly because, number one, as a matter of Vermont law, there's fee shifting, and number two, severance is allowed to take advantage of the AT&T provision, which not only recognizes state law and fee shifting, but also says that if severance rejects a, a settlement offer and receives more in arbitration, she gets at least a minimum recovery of $10,000, more if she's entitled to more, plus double her attorney's fees, all her expert fees and costs. That's actually a huge incentive. Tellingly, in Amex, what the parties and the plaintiffs and the solicitor general have said is that there was, if there was anything like that available in Amex, there wouldn't be any problem with vindication at all. There would be no case. Those plaintiffs have said to the Supreme Court that they would go, they would have gone and arbitrated. It wouldn't have presented any difficulty. Maybe I'm breaking your train of thought, but I want to go back to this sort of threshold question about how you construe ambiguities in these arbitration agreements. Now, you said, and I think correctly, that the federal principle is that if there's an ambiguity, you construe it in favor of arbitration. But it seems to me some of those older cases, including Moses H. Cohen, have been somewhat tempered, you know, by, for instance, you know, this recent case of Arthur Anderson versus Carlisle. Now, there, the Supreme Court makes this statement. This is on 129th Supreme Court at 1902. It says that the FAA doesn't, quote, purport to alter background principles of state contract law regarding scope of agreements, including the question is who is bound by it. In other words, I think under a certain view of Supreme Court arbitration law, we look to state law. And it's not necessarily true that, you know, the federal view of overriding, you know, all state law applies in all cases, right? And this might be one of them, couldn't it? Well, actually, Your Honor, what we understand the Supreme Court to have been saying there is that, is that the background principles of basic contract formation. Which is that, you know, ambiguities are construed against the drafter. That's true in every state, I'm sure. Your Honor, it would be things like what's proper execution of a contract, issues like that, and that the federal law of arbitrability has something special to say on the particular issue of how ambiguities are interpreted. But it's also the case, by the way, that we think that the only reasonable interpretation here is that AT&T mobility is covered. Wouldn't have to be the only reasonable interpretation for us to win. The opposite is true. But again, we don't think it could be necessary to define redundantly, define over and over again all of these parties when it seems clear from the contract and entirely reasonable to read the contract as UNICEL saying, this is a contract about your service. And if you have a complaint about your service, that complaint is to be arbitrated. That's what the clause says. It's a reasonable interpretation, just like the district court thought it was. We think it's the only correct one. All right. Well, what about addressing specifically what Mr. Cantor argues that, at least in the context we're talking about, that, you know, I think this is an argument, if I follow it, that we and us really don't have the same definition, right? Isn't that what his argument comes down to? That is, we think as a matter of basic grammar, that can't be true. But it's also not a logical construction of the contract. The difference between we and us is we is the word you use as the subject of a sentence, and us is the word that you use as a direct object. It's the same as she and her, I and me. You can't separate, you can't meaningfully separate those words or else the contract or anything else you write or say would just be rendered meaningless. Or it becomes ambiguous. Or it becomes ambiguous, in which case we win. That's correct, Your Honor. So, you're saying first it would be an absurd reading, and if it's not an absurd reading, it's an ambiguous reading, and then you win. Absolutely, Your Honor. And even if that's not true, you still win because she can vindicate her rights. That's right, Your Honor. What this comes down to is. That's your triple barrel. Yes, Your Honor. What it comes down to is that for this court to decide in severance's favor, the court would have to ignore the express assignment clause in the contract, which we haven't even talked about. The contract's express definition of we and us is synonyms and the rules of basic English grammar, and we don't think the court can ignore any of those. But even if it ignores all of them, the very most that that gets severance is that ambiguity that requires resolving in our favor. If there are no further questions, I'll yield the rest of my time. Thank you for your argument. Thank you, Your Honors. Regardless of the doubts in favor of arbitration require compelling arbitration, that's not true for interpretations that are totally unreasonable. For there to be an ambiguity, there have to be two interpretations that make some sense. As I explained before, there's no interpretation under which the phrase between you and us would import only AT&T. Under AT&T's own argument, the word us imports this whole parenthetical list of other types of people and entities, and if it does so, it leads to absurd results. It leads to the shareholder, who's a house painter, who gets in a dispute and tries to use a cell phone contract to compel arbitration. By the way, those are not the only uses of the phrase between you and us in this contract. In the enlargement that I handed out, down at the bottom of the arbitration clause, the last line, it says, this agreement supersedes, I'll shortcut, any arbitration agreement that may exist between you and us. The contracting parties here are Unicell and Ms. Severance, and Unicell can be perhaps substituted by a valid assignment. Suppose us in arbitration agreements between you and us includes the entire list that AT&T contends, includes agents, employees, officers, directors. So let's say one of those agents is Unicell's lawyer. For a totally separate reason, Ms. Severance goes to that lawyer and signs an engagement agreement that has an arbitration agreement in it. Now, would that lawyer, does this clause intend to negate that lawyer's arbitration agreement in his engagement agreement? No, nobody would think that. That's just totally outside of what we're talking about. The purpose of this supersedes any engagement agreement between you and us means between Unicell and us. As our Unicell contracts roll over, over time, this arbitration agreement replaces the previous one between you and us. Now, you and us, the word us. You're just about out of time, so you need to wrap up. Thank you. Your Honor, in the next paragraph, paragraph three, which is not on the enlargement, it says you agree to indemnify and hold us and our affiliates harmless from claims by third parties. You agree to hold us and our affiliates. So in that context, us is expanded. Unicell knows exactly how to write a contract to expand us. It did it. Us and our affiliates. Why would it add us and our affiliates if us already meant affiliates, parents, subs, employees, officers, directors, agents, etc.? And the answer is that it doesn't. That interpretation of us is untenable. It does not work. It doesn't even rise to the level of an ambiguity. It's just an unreasonable interpretation of between you and us. Right. Thank you for your argument. This matter will stand submitted. Thank you both for your argument. That was well argued. Thank you.
judges: Nelson, Tashima, Callahan